May it please the Court, I'd like to reserve three minutes for rebuttal, Your Honor. My name is Jeffrey Dickerson. I represent the appellant, Mr. Mazden, in this appeal from the denial of a motion for an order setting aside a judgment. The judgment was a sanction judgment, in essence. I call it a failure-to-prosecute type of judgment. The District Court below was considering the application of this Court's decision in Community Dental v. Taney, pursuant to this Court's remand order, and that matter was briefed and decided by the Magistrate Judge, Magistrate Judge Cook, against us. Therefore, we took this appeal. On this appeal, the question of the attorney's gross negligence as exceptional circumstances under Rule 60b-6 for setting aside a default is not an issue. The District Court found in our favor on that issue, found that there was gross negligence, and there's been no cross-appeal on that issue. Therefore, the only issue, as I see it, appears to be the culpability of the client issue or the culpability of the plaintiff issue. And that's where I'd like to turn now, unless the Court has some questions about the gross negligence issue. Taney says and really says nothing more than the culpability of the client may be an appropriate consideration to deny a Rule 60b-6 motion, but Taney does not set forth any factors or criteria or bright lines, if you will, to consider in making that determination. At one point in the proceedings leading to the entry of default judgment, Mr. Madsen was sanctioned for vilatory tactics or something. I mean, he was not, and or the attorney, but he was personally sanctioned, correct? Correct. And he paid those sanctions. Well, there was a delay on that payment, but after I took the case over, we paid them. And I think that's been since the remand, Your Honor. And this is not a case, is it, where Mazden was purely in the role of client. He insisted on being referred to as co-counsel. I would disagree respectfully. No doubt at the beginning of the case there was an effort to make him co-counsel, but that's not possible. And under our local rules, the magistrate judge denied that request and made Mr. Sherman counsel of record. Mr. Sherman was therefore the only person who would be served with court papers, the only person that opposing counsel was required to serve with opposing papers. And there's nothing in the record that indicates that from that point forward anything but that occurred. He was pro se at first. He was. He filed this complaint. And when Sherman became his lawyer, what was his status? Counsel of record. And you mean the plaintiff's status? Your client. What was his? What did he – what was he referred to as? What did he refer to himself as? Was it a co-counsel? I don't believe so. I don't know what you're referring to. He filed papers saying that he was co-counsel? I don't believe so, Your Honor. Okay. I could be mistaken on that, but I have scoured the record. I'm not familiar with what you're talking about. But the last thing that I know about where there was a co-counsel thing was where he was trying to associate with Mr. Sherman into the case. And that's just not feasible. And once that request was denied, I'm sure he realized that the attorney was running the show. He was the captain of the ship and he was – and Mr. Mazden was a client. Mr. Sherman was the captain of the ship. There's no question about his gross negligence on this appeal. Again, the question is, moving forward in time from the point we've just talked about in terms of, well, is he co-counsel or not? That's a factor that the Court below considered in terms of, well, he – it appears from that, the district court apparently assumed or presumed from that fact alone that he intended to take a laboring oar on the case. But there's nothing in the record to indicate that he took that laboring oar. In fact, the only thing that he took a laboring oar on was preparing the answers to interrogatories that he sent to Mr. Sherman, the draft answers, if you recall. In his declaration, he says that Mr. Sherman sent those to him. He prepared responses and sent them to Mr. Sherman and assumed that they'd been, as he puts it in his declaration, filed. Of course, he meant – we know that served. What was the event leading to dismissal? I think it was a number of factors, Your Honor. I was not in the case. The last event, wasn't it that both Mazden and Sherman were ordered to appear at a hearing? That was the precipitating factor. And they were specifically told, both of them, to attend. And there's no dispute that they had notice. No dispute. And no dispute that both of them failed to appear. No dispute. That's clear, Your Honor. And I believe at that hearing, if I understand correctly, Mr. Spencer made a motion, an oral motion, to dismiss the case or to impose sanctions. And that kind of, with everything that had gone on, led the magistrate judge in that case to recommend sua sponte, basically, based upon that oral motion, enter the dismissal. What's the standard of review that we apply to the district court's fact-finding of Mr. Mazden's involvement in the events leading to dismissal? Well, the standard for review of grant or denial of a Rule 60b6 motion is whether or not an abuse of discretion occurred. I would submit that the clearly erroneous ---- What about the factual findings that underpin that? I would say that the clearly erroneous standard would apply. In other words, is there any substantial evidence in the record to support that factual finding? For instance, the factual finding I just spoke about. Is there any substantial evidence in the record to support the finding that he was somehow a knowledgeable litigant, that he somehow was taking the laboring oar on his  Well, wasn't there a specific finding of bad faith and misconduct? In terms of Mr. Mazden's conduct? Uh-huh. Not in the decision below. Didn't the district court make a specific finding of bad faith or misconduct? Not in the decision below this. Say no. Yes. The decision below was solely on ---- based upon the red flags that my client was receiving, according to the magistrate judge. She saw these signals that he himself was involved with as somehow triggering an obligation on his part to do something more. What more that is, we don't know. We know he tried to retain another attorney unsuccessfully. We know that between that time ---- before that time and after that time, he received assurances from ---- orally from Mr. Sherman that the case was proceeding smoothly, that everything was under control. How can you fault him with respect to the interrogatories not being served? There's no indication that that ever became a serious issue. I mean, as far as the client is concerned. Perhaps Mr. Sherman had some more knowledge about that being an issue, but the client ---- there's no evidence the client had any inkling that that was a problem. He thought it was taken care of, plus oral assurances, like in Taney, from the attorney that says everything's under control, don't worry about it. So the question that this Court is presented with is where do we go with this ---- this language in Taney that culpability, which didn't apply in that case, rises to a level to deny a motion despite the gross negligence of the attorney? I think your client is being punished for not firing Sherman sooner. I think that's a good way to look at it. I mean, he should have stepped on it sooner, but is that ---- By the way, what's happened with Sherman? I don't think he's ---- Has any of this matter been ---- of his conduct been brought to the attention of bar authorities? Your Honor, I ---- it's not in the record, so I can represent to the Court that I don't believe he's practicing law anymore and that he's not gone but has faded away. And that's ---- Did Mr. Mazdan ever file a complaint with bar authorities? No, he did not. Or bring a malpractice action? He did not. Your Honor, I'd like to reserve the remaining of my time for rebuttal. Thank you, counsel. Thank you. We'll hear from the State. Mr. Spencer, feel free to use the counsel's table. That's your entitlement. Oh, thank you. Good morning, Your Honor. I'm Jim Spencer, Deputy Attorney General of the State of Nevada, representing the State appellees in this matter. I would agree that we're not here about gross negligence. Mr. Sherman displayed gross negligence. What we're here about is a standard for this Court to adopt concerning at what point does a client's involvement in a case create a culpability under the Taney language. In this case, in 1998, Mr. Mazdan, Dr. Mazdan, filed this case in pro se. Three months later, when he found out the discovery had not been provided or the time and schedule order had not been provided by Mr. Sherman to the Court, and Mr. Sherman, who was acting as associate counsel, he wrote to Judge Magistrate Halsey-Atkins and apologized for Mr. Sherman's conduct. He apologized, and he said, I shall attempt to ensure that it won't happen again and to expedite my case. Was he given copies of all pleadings and court orders himself, or did they come through Mr. Sherman? Those to that point, Mr. Sherman had nothing to do with the case. He had not signed on at that point. When Sherman came in, he just got all the papers, right? Yes, sir. Sure. Did he send them all to Dr. Mazdan? He would have to do that under his attorney obligation to keep advised as to the case, but I don't know what he did with Dr. Mazdan. Did he cast any light on the question I asked, opposing counsel, and that is, did Dr. Mazdan ever appear as co-counsel on any of the papers? Once Sherman was in, did he ever show as, quote, co-counsel? Yes, he did, Your Honor, and that was when Magistrate Judge Adkins put a halt to that practice, pointing out that there can only be one attorney in the case. And at that point, Mr. Sherman did file in and appear on behalf of Dr. Mazdan. We're probably here because, although the district court found gross negligence on the part of Attorney Sherman, the court went on to find that the client, Mr. Mazdan, Dr. Mazdan, had some involvement. He wasn't merely pure client. He had some direct involvement in the events leading to dismissal, and therefore, Rule 60b-6, relief was not appropriate. Can you point to the specific fact findings that the district court or the magistrate judge or otherwise made that support that conclusion? The initial filing of the complaint by Dr. Mazdan before his association with Mr. Sherman was the first instance. The next instance where Dr. Mazdan had actual knowledge that there were problems with the case was a year later in 1999, when Mr. Sherman, according to Dr. Mazdan's affidavit, advised him that he had failed again to provide discovery or to perform their own interrogatories. This was a year after Dr. Mazdan's promise that he would expedite the case and to ensure that there weren't problems again. The record indicates, and most of this, as you know, Your Honor, was from the affidavit of Dr. Mazdan. This was a time when there were several phone calls that were made, according to Dr. Mazdan's affidavit, of his numerous attempts to contact counsel and find out the status of the case. And to answer your question, this did happen during that period of time. It was a year after the letter that was written by Dr. Mazdan to Magistrate Judge Atkins, when he says in his affidavit that Mr. Sherman had told him he had blown another discovery deadline. Nonetheless, he continued to retain Paul Sherman for a period of months after that in his court. So is he – I'll ask the same question I asked your opponent. Is he being punished for not firing Sherman sooner? I think – I think that he's punishing the defendants, Your Honor, for not firing Paul Sherman sooner to get competent counsel on the case. No. Is Dr. Mazdan being sanctioned, punished through dismissal for not terminating Attorney Sherman sooner? I would say yes, Your Honor, and I think it's appropriate. Is that appropriate? I think it is appropriate, Your Honor. As the general rule in the United States is that you pick your attorney and you pick him with his warts and with his strengths. And in this case, he continued to stay with Paul Sherman. Isn't there an attorney that's telling you he's doing everything that's required when, in fact, he's not? Your Honor, if that was the only fact in this case, we'd be back to Taney. But that's not the only fact. We have a record replete with Dan Mazdan's, Dr. Mazdan's statements that he was not getting satisfactory answers from Paul Sherman. Again and again over a period of two years, he took no action to protect his interests. And the Magistrate Judge Halsey-Atkins stated before Taney came out that he had a duty to take action to protect his interests. And after Taney came out, Magistrate Judge Cook said the same thing, except she said that his failure to protect his interests was culpable conduct under the Taney standard. And I would suggest to the Court that the Court needs to fashion a standard that says that there has to be reasonable diligence on behalf of the client to protect his interests. Otherwise, you should not allow a Rule 60b-6 motion to be granted. In other words, we have to go beyond Taney? Or do you think this is covered by Taney? I think this is covered by Taney, Your Honor. We're talking about here, and I think opposing counsel stated, we're talking about what level of culpable conduct, what does culpable conduct in Taney mean? And we briefed the issue with citing from the cases relied on in Taney to talk about an unknowing client, an innocent client, a client that doesn't have any role or any understanding of what the case is. In Taney, as it went into the spectrum, he learns about a default dismissal on the day. When he gets it, he learns that the case is gone. He had no inkling and no information except what his counsel had told him, that everything was going fine. So for a client in the future, under your theory of the case, to protect himself or herself from this kind of event, the best thing to do would be to tell the attorney at the onset, don't tell me anything that's going on in the case. I don't want to have any involvement in this case whatsoever. Just tell me when I need to show up and what I need to do as a client. Otherwise, I have nothing to do with this case. That's the way to protect yourself under Taney? No, Your Honor. I think under Taney, there's a standard of reasonableness that comes in between no knowledge at all and direct hurt that Taney suffered from his attorney telling him everything was okay and the other side where we have active involvement initially with Dr. Masden and a continuing course of conduct where he acknowledges over and over again. He goes to another attorney to ask for assistance. He asked Paul Sherman to refer him to another attorney. Your Honor, at some point in there, it becomes reasonable for the client to pick up his own interest and protect himself. Because failure to do that in this case has now set us with a claim for damages back to April 1997. 1997 is what the complaint states as his first date for compensable damages in this case. And that harms the defendant, Your Honor, because he didn't pick up his rights and protect himself. And I'm not saying it's a clear line, but I think this Court and other courts have looked at the term reasonable diligence or reasonable, and I think it would be a case-by-case basis. What is the most culpable conduct that Dr. Masden engaged in to lose the case? Was it failure to file or fire Sherman, or was it something else? I think it was less than that, Your Honor. He could have done many things short of firing Sherman. He could have reported this to the Nevada State Bar for failure to communicate. That's an SCR in Nevada, failure to communicate with a client. He did go to another attorney, but he did not pick up his duty at that point to say, what do I do? I need another attorney. He said he went to Mark Mousert, and he's a civil rights attorney in Reno, and Mark Mousert wouldn't take his case. But it showed an indication, a knowledge, that he had a real problem with Paul Sherman's representation, and he didn't take the next step. And both the magistrates below said he needed to take that next step to protect his rights, to demonstrate reasonable diligence. So your theory is basically founded on Dr. Masden's negligence. It went beyond negligence, Your Honor. It became almost an active negligence, if there's such a thing, to know that to omit and omit and omit and omit to the point where you say, oh, I ---- When you say omit, do you mean missed deadlines, failure to appear, that sort of thing? No, Your Honor. What I mean is failure to pick up his rights and protect himself. At some point, a reasonable person. But it goes to his ---- if I understand your list of these things that he did, the client, it's number one, he filed a complaint pro se. That's on the list, right? Yes, Your Honor. And that he was dilatory in recognizing Sherman's negligence. Yes, Your Honor. And that he failed to terminate him in a timely fashion. Or to exercise any other way to ---- He failed to go and try to find another lawyer, although he did, and that lawyer told him he wouldn't take the case. Had he gone to the Nevada State Bar with a complaint of failure to communicate? What would that have done for this proceeding? He probably would have been referred to a lawyer, another lawyer by the State Bar, I would expect, under these egregious circumstances. When he comes in and says, I haven't gotten any satisfactory result from my client for the last year and a half or from my attorney for the last year and a half, that would have been a State Bar complaint. On our list is failure to file a complaint with a State Bar. I would say that was one reasonable way of protecting his rights short of firing Sherman, but at some point he needed to file ---- fire Paul Sherman, at some point a reasonable person would have. He truly is being punished for not firing Sherman. He's being punished for not protecting his interests, Your Honor. He should have filed Paul Sherman. I agree with the Court. Okay. Thank you, Counsel. Your time has expired. Thank you. Mr. Dickerson, you have some reserve time. I guess one way of looking at it is, does culpable conduct require the plaintiff to be an ostrich or a gorilla when it comes to his lawyer? Do you stick your head in the sand and let the lawyer take care of everything and, therefore, you're not culpable because you don't know what's going on, or do you exercise some modicum of diligence in trying to ascertain what's going on? I've supplied you with the interrogatory answers. What's going on? Well, those weren't properly served in a timely fashion, but in that very conversation he assures them that everything's okay. And then he says, a few months later, he says, what's going on? Can you refer me to another attorney? Everything's okay. In December, he gets another assurance that everything's okay. April, there's another conversation. In the summer of 1999, he tries to hire Mr. Mousert. Mr. Mousert won't take the case. He writes to the magistrate of his own initiative in November of that year, about 2000, I believe it is, I had the year wrong, and learns from the judge that his case has been dismissed. That's the first inkling he had that serious problems were underway. What's the significance of the fact that this is a pro se complaint? In other words, it never got amended by the work of the lawyer. It will when I get back, I guarantee you that. I think that's one of the things I point out in my brief, that if the filing of the complaint is an important fact for the district court to consider, then you ought to read the complaint, and that shows that he's no litigant. He's no civil rights litigant. That complaint is a pro per complaint. It's not the work of a lawyer. It fails to state the essential elements of a lot of the claim. I mean, that's evidence in our favor, I believe. Thank you, Your Honors. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and we will next hear Rodriguez v. City and County of San Francisco. Thank you.
judges: O'scannlain, Siler , Hawkins